STATE OF IOWA, Appellee, v. JESSE V. SHACKLEFORD, Appellant.

INTOXICATING LIQUORS: Nuisance—Acts Constituting Single Of-
1   fense. The unlawful keeping by an accused of intoxicating liquors
     both in his residence and in a barn which is within the curtilage
     of said residence constitutes but one offense.

INTOXICATING LIQUORS: Nuisance—Evidence. On a prosecution
2   for maintaining a liquor nuisance, evidence is admissible which
     tends to show that, when the premises were searched, drunken
     men and empty bottles were found thereon; also, that liquors were
     found at different places within the same curtilage.

*Appeal from Clarke District Court.*—HOMER A. FULLER, Judge.

OCTOBER 17, 1924.

THE defendant was indicted for maintaining a liquor
nuisance, and tried by a jury and found guilty. The trial court
imposed a fine of $600 and costs, and decreed that, on failure
to pay the fine, he should be confined in jail, etc. The defend-
ant appeals.—*Affirmed.*

*O. M. Slaymaker* and *R. E. Killmar,* for appellant.

*Ben J. Gibson,* Attorney-general, *S. S. Faville,* Assistant
Attorney-general, and *M. R. Stansell,* County Attorney, for
appellee.

PRESTON, J.—The indictment does not describe the prop-
erty or place where it is alleged the nuisance was maintained.
It charges but one offense. No abatement was asked. It charges
that defendant maintained a place in Clarke County, Iowa.
The specific language is that:

"On the 20th day of May, 1923, in the county of Clarke
aforesaid, and on divers other days between May 20, 1923, and
the finding of this indictment, in the county and state aforesaid,
did erect, establish, continue, and use a building, erection, and
place, with intent and for the purpose then and there and

therein to sell intoxicating liquor contrary to law, and with intent and for the purpose then and there and therein to own, keep, and be concerned, engaged, and employed in owning and keeping intoxicating liquor, with the intent unlawfully to sell the same, and did then and there and therein sell intoxicating liquor contrary to law, and did then and there and therein own and keep, and was then and there and therein concerned and engaged and employed in owning and keeping intoxicating liquor, with intent to unlawfully sell the same, contrary to the statute,'' etc.

A search was had of defendant's premises on May 20, 1923. The search warrant described the premises as the northeast quarter of the northeast quarter of Section 5, Liberty Township, Clarke County, Iowa. Defendant was the lessee of the farm, and in possession thereof. Two bottles of beer, which, upon analysis, were found to contain more than five per cent of alcoholic content, were found in the dwelling house, in the pantry adjoining the kitchen. A gallon can about half full of alcohol was found in the manger of the barn, covered with hay. Several empty bottles and vessels were found about the premises, and a small amount of homemade wine in a cellar or cave. Several of the empty vessels about the premises had an odor of intoxicating liquor. At the time the search began, the defendant was not at home, but he returned while the sheriff and deputies were still there. Mrs. Shackleford told the sheriff and his deputy that there had been quite a lot of drinking going on around the premises, and that:

1. INTOXICATING LIQUORS: nuisance: acts constituting single offense.

"It seems as though they come in here, and we let them drink here and put on their parties and such as that. We stand for it because we are good fellows, I guess.''

It appears that friends came from Des Moines and stopped at the Shackleford home; and that there had been people there from New Virginia, and girls from Osceola. When the officers arrived at the home, there were two men present, and Mrs. Shackleford and another woman. The sheriff testified that in his opinion these men were drunk at the time he arrived. The house and barn were about one hundred feet apart. The house was used as the dwelling of the defendant and his family. Such

is the tendency of the testimony of the State. Defendant introduced no evidence.

At the close of the evidence, defendant moved that the State be required to elect whether it would rely for a conviction upon the maintaining of a nuisance at the dwelling house or at the barn. The motion alleged that the evidence tended to show separate and distinct offenses, and that the evidence tended to show the keeping of two places. The motion was overruled. Defendant then moved the court to direct the jury to return a verdict of not guilty of maintaining a nuisance at the dwelling house, because the evidence showed that the same was a private dwelling, and that the only amount of liquor found was two bottles of beer, and there was no evidence to show sales therein, or that liquor had been offered for sale. The motion was overruled. Defendant then made a like motion to direct a verdict as to the barn, because there was no evidence to show that there had ever been any sales therein, or that any liquor was kept for the purpose of sale. This was overruled. Defendant then made a motion for a directed verdict on the ground that the evidence tended to prove separate and distinct offenses, and because there was not sufficient evidence on which to base a verdict of guilty. This motion was also overruled. The last three motions were not separately overruled, but together. Defendant requested no instructions.

The court instructed, in substance, that, if the jury found that defendant kept, used, or maintained a building or place in Clarke County, Iowa, wherein was kept intoxicating liquor with intent to sell in violation of law, it would be justified in finding defendant guilty. The court also instructed, in substance, that the finding of intoxicating liquors in the possession of one not legally authorized to sell or use the same, except in a private dwelling house, would be presumptive evidence that such liquors are kept for illegal sale; but that such liquors found in the dwelling house of the defendant would not raise the presumption that they were kept for illegal sale; and that, if the jury should find that the two bottles of liquor found in the dwelling house were the only ones in the possession of the defendant, and that he did not have possession of or control over any of the

intoxicating liquors claimed to have been found in the barn, then he should be acquitted; that the jury should consider all the evidence in the case, together with the presumption as to the liquor found in the barn.

1.  Appellant contends that the trial court erred in the several rulings before referred to.  He appears to rely most strongly upon the case of *State v. Poull*, 14 N. D. 557 (105 N. W. 717), and other like cases cited therein, holding that the doing of prohibited things in different buildings constitutes separate offenses.  It is contended by the State that the *Poull* case is not in point, because the statutes of North Dakota and Iowa are dissimilar.  The point is well taken, we think.  Under the Iowa statute, the nuisance may be abated.  But in that case, or in an action in equity to enjoin the nuisance, it would be necessary to describe the place.  If the place had been described in the indictment, it would be necessary to prove it.  *State v. Schuler*, 109 Iowa 111.  It is not necessary, however, to describe the place in the indictment, but it has been frequently held that it is sufficient to charge that the party maintained a place in the county.  *State v. Waltz*, 74 Iowa 610.  In the *Poull* case, the court held that, under the statute of that state, the description of the place where the nuisance was maintained was insufficient, and that, under the statute, it was not sufficiently definite to warrant abatement proceedings after conviction.  The North Dakota statute and decisions seem to require specific description of the place, in the indictment.  The distinction between an action for abatement of the nuisance and a prosecution for a conviction of the defendant, is pointed out in *State v. Waltz*, 74 Iowa 610, 612.  The court said:

"It will be observed that, under the statute applicable to the case before us, one charged with the offense of nuisance contemplated by it may be indicted, and upon the indictment he may be fined, and the nuisance may be abated.  Now, if it be assumed that the order of abatement cannot be made in the absence of allegations in the indictment particularly describing the *locus* of the nuisance, it does not follow that the offender may not be punished by fine, upon conviction under such an indictment.  The statute declares that he may be fined upon con-

viction. It prescribes further proceedings after conviction under such an indictment, to the end that the nuisance be abated. Now, if the order of abatement cannot be made in the absence of averments as to the *locus*, the court, upon conviction, will render judgment for the fine, regarding the indictment as not presenting a case for abatement of the nuisance. It will be presumed that the State sought in the prosecution nothing further in the way of punishment than a fine upon defendant. The statute provides for the fine; the indictment alleges sufficient facts to support a judgment therefor. It does not allege facts sufficient to support an order for abatement. The case will be regarded, then, as one in which the State seeks a conviction and a fine, and nothing more.''

In the *Poull* case, it appeared that there were two buildings on the lots in question, in one of which defendant lived, and a barn on the rear portion of the lots. The two buildings were not connected in any way. It appeared from the evidence that defendant sold liquors in each of said buildings, and permitted persons to resort to each for the purpose of drinking. It was held that this evidence would sustain a conviction for maintaining a nuisance at each of said places. Under such circumstances, it was held error to not require the State to elect whether it would rely for a conviction on the evidence concerning sales at the barn or at the residence. The court found that the two buildings were independent, and that there were two separate nuisances maintained.

The same court, however, in *State v. Brown,* 14 N. D. 529 (104 N. W. 1112), in a case where the facts were more like the situation in the instant case, held that ''a place'' is a comprehensive term, and may consist of one or more rooms in a building; or it may be an entire building; or, as in that case, more than one building within the same place, used together for the convenient conduct of the prohibited business. In that case, the question arose as to the form of the indictment; while in the instant case, it arises under the evidence. But in that case, though there were two buildings, the court said of the indictment:

''It is, in substance, plainly charged that the frame shanty

or building was adjacent to the 'Little Kindred,' and within the curtilage of the latter, thereby implying that the shanty was in the same inclosure, and was part of the same place or tenement. And it is expressly alleged, in effect, that both structures were used together, and constituted a single nuisance.''

This we understand to be the position of the State in regard to the evidence in the instant case. See, also, *Commonwealth v. Patterson*, 153 Mass. 5 (26 N. E. 136), where it appeared from the evidence that there were several disconnected buildings on the lot controlled by defendant. He asked that a verdict be directed in his favor on the ground that the evidence showed that there were two or more tenements, either of which the jury might find defendant guilty of keeping. The trial court refused to so rule. The court said:

''The place kept and used by the defendant for the illegal sale of intoxicating liquor, consisting of a lot of land with detached buildings upon it, was properly described as a tenement. While it may have been divisible into several tenements, it was not so divided, but was used as one tenement and constituted one nuisance, the keeping of which was one offense.''

Appellant cites *State v. Viers*, 82 Iowa 397, 398, as sustaining his contention. The question as to election was not in that case. The question was whether the presence of liquor in a building is essential to constitute the crime of nuisance. The court held that this was not essential. The court did say, as claimed by appellant, that:

''If one house is used for the sale of intoxicating liquors which are kept in another, there can be no doubt but both are nuisances.''

The court also said:

''If the liquors were kept in a house not occupied by the defendant, yet sold in a house occupied by him, he was guilty of committing a nuisance by making sales of liquor.''

In other words, defendant might keep liquors in one place and make the sales in another, thus using one in connection with the other. As bearing somewhat upon this proposition, see *State v. Donahue*, 120 Iowa 154, 157, 158. In that case, the liquor was stored or kept in a room used in connection with the mulct

saloon. It was held that this did not violate the statute which required sales of intoxicating liquors in a single room, under the mulct law. In *State v. Illsley*, 81 Iowa 49, it was held competent to prove that another place was used as a base of supplies. That case was followed in *State v. Arnold*, 98 Iowa 253, where sales were shown in the hotel; also in other buildings appurtenant thereto.

We think that the evidence here as to the barn and the house was so related that it was competent as bearing on the question whether the defendant was maintaining a place wherein intoxicating liquors were kept, with intent to

2. INTOXICATING LIQUORS: nuisance: evidence.

sell, contrary to law. The evidence of the finding of two quarts of beer in the dwelling house would not, of itself, justify the presumption that, because of the quantity, the liquor was kept with intent to sell. The jury was so told. The other evidence, of empty bottles, drunken persons, etc., would be relevant, as sustaining the claim that the liquors were kept in the house for sale. The presumption would arise from the finding of the alcohol in the barn, hidden under the hay. There was no direct evidence of any sales in either the house or barn. True, the jury could have found, under the evidence, that the presumption of illegal keeping in both the barn and the house would obtain; but there is nothing in the evidence to show that they were used separately and independently of each other. The evidence tends to show that they were used together, as one place, on the same plot of ground. This could be shown if another prosecution should be attempted for either the house or the barn. The defendant introduced no evidence; therefore there was nothing to rebut the presumption. *State v. Wilson*, 152 Iowa 529. See, also, *Shidler v. Keenan Bros.*, 167 Iowa 70. We are of opinion that the trial court did not err in the rulings complained of.

2. The trial court did not impose the maximum fine. It is contended by appellant that the judgment which was imposed is excessive. He asks, if the judgment is otherwise affirmed, that this court reduce the fine, and that only the minimum fine be imposed. There was no evidence introduced in mitigation. Necessarily, the trial court was better acquainted with local con-

ditions than this court can be. This offense, like others, is committed in secret, and there are many evasions. It seems to be the thought of those engaged in the business that, after the enforcing officers run them down and secure evidence sufficient to convict, the courts should "let them off easy," or prepare a soft feather bed upon which they can light, so that they can get up practically unhurt and start over again. We have said that the time has come when the punishment inflicted should be such as to have a deterring effect. *State v. Bowers,* 197 Iowa 336. See, also, *State v. Williams,* 195 Iowa 374. The judgment was not excessive.

3. The State has filed a short additional abstract. There is nothing to indicate that it was not filed in good faith, for the purpose of presenting the case according to the theory of the State as to how the case should be presented. Under such circumstances, it should not be penalized. Appellant's motion in reference thereto is overruled.

There is no prejudicial error, and the judgment is—*Affirmed.*

ARTHUR, C. J., and EVANS and DE GRAFF, JJ., concur.